No. 23-1787

# United States Court of Appeals
## For the Eighth Circuit

STATES OF MISSOURI, ARKANSAS, AND IOWA,

*Petitioners,*

AMERICAN WATER WORKS ASSOCIATION AND NATIONAL RURAL WATER ASSOCIATION,

*Intervenors,*

v.

MICHAEL REGAN, IN HIS OFFICIAL CAPACITY AS ADMINISTRATOR OF THE U.S. ENVIRONMENTAL PROTECTION AGENCY, ET AL.,

*Respondents.*

On Petition for Review of Final Action by the
United States Environmental Protection Agency

**PETITIONER-STATES RESPONSE SUPPORTING INTERVENORS' MOTION FOR STAY PENDING REVIEW**

                                          **ANDREW BAILEY**
                                        Missouri Attorney General

| Missouri Attorney General's Office | Jeff P. Johnson, Mo. Bar No. 73249 |
| --- | --- |
| Post Office Box 899 | *Deputy Solicitor General* |
| Jefferson City, MO 65102 | Richard Groeneman, Mo. Bar No. 57157 |
| Tel: (314) 340-7366 | Timothy Duggan, Mo. Bar No. 27827 |
| Fax: (573) 751-0774 | *Assistant Attorneys General* |
| Jeff.johnson@ago.mo.gov | *Counsel for Petitioners* |

*Additional counsel listed on signature block*

# TABLE OF AUTHORITIES

**Cases** Page(s)

*Bittner v. United States,*
 143 S. Ct. 713 (2023) ................................................................... 9, 10

*Children's Health Care v. Centers for Medicare & Medicaid Servs.,*
 900 F.3d 1022 (8th Cir. 2018) ............................................................ 9

*Dep't of Com. v. New York,*
 139 S. Ct. 2551 (2019) ..................................................................... 5

*F.C.C. v. Fox Television Stations, Inc.,*
 556 U.S. 502 (2009) ....................................................................... 10

*I.N.S. v. Chadha,*
 462 U.S. 919 (1983) ....................................................................... 11

*Iowa League of Cities v. E.P.A.,*
 711 F.3d 844 (8th Cir. 2013) ...................................................... passim

*Kingdomware Techs., Inc. v. United States,*
 579 U.S. 162 (2016) ......................................................................... 6

*League of Women Voters of U.S. v. Newby,*
 838 F.3d 1 (D.C. Cir. 2016) ............................................................. 11

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
 463 U.S. 29, (1983) ......................................................................... 10

*Nat. Res. Def. Council v. Wheeler,*
 955 F.3d 68 (D.C. Cir. 2020) ............................................................. 8

*Nken v. Holder,*
 556 U.S. 418 (2009) ......................................................................... 4

*S. Dakota v. Ubbelohde,*
 330 F.3d 1014 (8th Cir. 2003) ........................................................... 5

**Statutes**

5 U.S.C. § 553(b)(A) ..................................................................................8

42 U.S.C. § 300g-2 ...................................................................................7

42 U.S.C. § 300i-2 ....................................................................................9

**Rules**

Fed. R. App. P. 27 and 32........................................................................14

**Regulations**

40 C.F.R. § 142.10 ....................................................................................6

40 C.F.R. §§ 141.2, 142.16(b)(3) and 142.16(o)(2) ...................................9

Petitioners, the States of Missouri, Iowa, and Arkansas, agree that Intervenors have shown that they are likely to succeed on the merits of their claims and that the other requirements for granting a stay pending review are met. *See Nken v. Holder*, 556 U.S. 418, 434 (2009) (citation omitted). Petitioners emphasize the following points for the Court's consideration.

The Court need look no further than its previous decision in *Iowa League of Cities v. E.P.A.*, 711 F.3d 844 (8th Cir. 2013) to see why Intervenors (and the States) are likely to succeed on the merits. The Cybersecurity Rule is a legislative rule unlawfully promulgated without notice and comment that binds regulated entities. This Court should grant preliminary relief for Intervenors, who represent thousands of PWSs in many states, while EPA's Memorandum instructs state regulators that they "must evaluate the cybersecurity of operational technology used by a PWS when conducting PWS sanitary surveys or through other state programs." R. Doc. 1, at 1. Granting relief protects them from "the predictable effect of Government action on the decisions of third parties." *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2566 (2019).

This Court does not "permit an agency to disguise its promulgations through superficial formality," by labeling such action a Memorandum and failing to publish it in the Federal Register. *Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 862 (8th Cir. 2013). "Where a policy statement purports to create substantive requirements, it can be a legislative rule regardless of the agency's characterization." *S. Dakota v. Ubbelohde*, 330 F.3d 1014, 1028 (8th Cir. 2003). This Court looks at the language and context of challenged action, including whether regulated entities are "free to ignore" it. *Id.* at 1029. When "private parties have 'reasonably [been] led to believe that failure to conform will bring adverse consequences,' which tends to make the document binding as a practical matter.'" *Iowa League of Cities*, 711 F.3d at 864. Any "functional analysis of" the Cybersecurity Rule shows that EPA's "words and deeds" are intended to legally and practically bind regulated entities. *Id.* at 862.

Starting with the text of the Cybersecurity Rule, EPA declares that States "must evaluate the cybersecurity of operational technology." R. Doc. at 1. Throughout the Cybersecurity Rule, EPA makes clear that "cybersecurity must be evaluated in reviewing operational technology . . . during sanitary surveys, . . . the sanitary survey of that PWS must

5

include an evaluation of the adequacy of the cybersecurity of that operational technology for producing and distributing safe drinking water, . . . during a sanitary survey of a PWS, states must do the following to comply with the requirement to conduct a 'sanitary survey.'" *Id.* at 2. EPA notes that "States can fulfill the *responsibility* to evaluate cybersecurity through different approaches" and "may meet this *requirement* by using an existing or establishing a new program outside of sanitary surveys." *Id.* at 3 (emphasis added). And the Rule explicitly requires States to use their "authority to require [a] PWS to address a significant deficiency" related to cybersecurity. *Id.* The first three pages are clear: EPA intends the Cybersecurity Rule to be a binding requirement. *See Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 172 (2016) (recognizing "*shall (or must )*" is mandatory).

The context also shows that the Cybersecurity Rule is meant to be binding on regulated entities, and hence the Intervenors face legal obligations they are not free to ignore. States with primacy must conduct sanitary surveys. 40 C.F.R. § 142.10 (States must implement "[a] systematic program for conducting sanitary surveys of public water systems in the State"); 42 U.S.C. § 300g-2 (Primacy depends on

6

"conducting such monitoring and making such inspections as the Administrator may require by regulation."). EPA claims to be reinterpreting its regulatory requirements such that reviewing "equipment" and "operation" now encompass a review of the cybersecurity practices and controls of a PWS. R. Doc. 1, at 2. EPA also confirms that "[a]s a part of an existing required practice called a sanitary survey, states must employ one of the flexible options available to evaluate the effectiveness of the cybersecurity of a PWS." EPA, *Fact Sheet: Increasing Cybersecurity Resilience at Public Water Systems*, Doc. No. EPA-810-f-23-004 (2023), https://perma.cc/H7HC-9N7A. The Cybersecurity Rule removes States' enforcement discretion over significant cybersecurity deficiencies, as their primacy depends on compliance.

EPA will likely say that States have discretion in choosing one of three options to comply with the Rule, but the Court should "struggle to spot the surviving state discretion." *Iowa League of Cities*, 711 F.3d at 864. EPA's "statements prospectively restricting the [States'] discretion" show that the Rule purports to have a "'present-day binding effect' on

regulated entities, thereby 'conclusively disposing of certain issues.'" *Id.* at 862.

Besides removing States' discretion, the legislative nature of the Cybersecurity Rule compels finding for the Intervenors (and eventually for the States). The Cybersecurity Rule is not an "interpretative rule" or "general statement of policy" exempt from notice-and-comment requirements. 5 U.S.C. § 553(b)(A). A "'legislative rule' is one that has 'legal effect' or, alternately, one that an agency promulgates with the 'intent to exercise' its 'delegated legislative power' by speaking with the force of law." *Nat. Res. Def. Council v. Wheeler*, 955 F.3d 68, 83 (D.C. Cir. 2020).

Though couched in terms of "clarifying" or "reinterpreting" existing legal duties, the Cybersecurity Rule has independent legal effect beyond its statutory and regulatory authority. As explained above, it creates new duties for States and new "significant deficiencies" for PWSs, thereby altering the legal regime. "Expanding the footprint of a regulation by imposing new requirements, rather than simply interpreting the legal norms Congress or the agency itself has previously created, is the

8

hallmark of legislative rules." *Children's Health Care v. Centers for Medicare & Medicaid Servs.*, 900 F.3d 1022, 1025 (8th Cir. 2018).

The Cybersecurity Rule's Addendum confirms that EPA is changing States' duties while conducting federally required PWS sanitary surveys. R. Doc. 1, at 7 ("EPA is interpreting its existing regulations regarding the duties of states during PWS sanitary surveys, which states are required to perform under 40 C.F.R. §§ 141.2, 142.16(b)(3) and 142.16(o)(2)."). Yet EPA fails to identify any statutory reason that cybersecurity is now included in the unaltered terms of "equipment" and "operation" for all PWSs—especially in light of recent Congressional action. Congress requires PWSs to assess the resilience of "electronic, computer, or other automated systems (including the security of such systems) which are utilized by" PWSs serving more than 3,300 persons. 42 U.S.C. § 300i-2. And where Congress has directly addressed an issue, there is a strong presumption that it has not delegated it to the agency. *See Bittner v. United States,* 143 S. Ct. 713, 720 (2023) ("When Congress includes particular language in one section of a statute but omits it from a neighbor, we normally understand that difference in language to convey

9

a difference in meaning."). It is improper for EPA to attempt to update the statute on Congress's behalf.

Though EPA claims its actions reflect the "purpose of sanitary surveys" and that its "guidance documents support this interpretation of the regulatory text," its action constitutes aggressive overreach. R. Doc. 1, at 8. Indeed, EPA bases its newfound authority on changes in factual circumstances, not statutory authority. It explains that this change is necessary because "PWSs are frequent targets of malicious cyber activity," *id.* at 2, the "use of operation technology . . . has become widespread among PWSs of all sizes and types," *id.* at 8, and that operation technology is "vulnerable to being disabled or manipulated through malicious cyber activity," *id.* Those facts may help EPA articulate a "satisfactory explanation" to justify EPA's policy change during informal rulemaking—assuming that EPA has the statutory authority to do so. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, (1983). But it does not cure EPA's failure to follow the APA's notice and comment requirements here. Nor does it absolve EPA of its obligation to "display awareness that it is changing position." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502,

10

515 (2009). Instead, EPA incorrectly insists it has always had this authority.

A functional analysis of the Cybersecurity Rule shows that its intended effect is to change the legal duties of States and require them to enforce EPA's new cybersecurity concerns. Because EPA did not go through notice-and-comment, Intervenors (and the States) are likely to succeed.

Finally, the public interest weighs in favor of a stay. There is generally no public interest in the perpetuation of unlawful agency action." *See League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). In addition to the harm that Intervenors allege, it harms the constitutional order when federal agencies attempt to wield legislative power. *See I.N.S. v. Chadha,* 462 U.S. 919, 951 (1983) ("Constitution sought … to assure, as nearly as possible, that each Branch of government would confine itself to its assigned responsibility."). And should EPA claim that States do in fact have significant discretion and are free to ignore the Cybersecurity Rule, then EPA is not harmed by a stay.

Under this Court's precedents, the Cybersecurity Rule is a legislative rule that must go through notice-and-comment. The Court should provide relief to Intervenors while this case is pending.

Dated: June 30, 2023

Respectfully submitted,

**ANDREW BAILEY**
Missouri Attorney General

*/s/ Jeff P. Johnson*

Jeff P. Johnson, Mo. Bar No. 73249
 Deputy Solicitor General
Richard Groeneman,
Mo. Bar No. 57157
Timothy Duggan, Mo. Bar No. 27827
 Assistant Attorneys General
Missouri Attorney General's Office
Post Office Box 899
Jefferson City, MO 65102
Tel: (314) 340-7366
Fax: (573) 751-0774
Jeff.johnson@ago.mo.gov
*Counsel for Petitioner State of Missouri*

**TIM GRIFFIN**
Arkansas Attorney General

Nicholas Bronni
Solicitor General
Dylan L. Jacobs
  Deputy Solicitor General
Michael A. Cantrell
  Assistant Solicitor General
Arkansas Attorney
General's Office
323 Center Street, Suite 200
Little Rock, AR 72201
Phone: (501) 682-2007
Dylan.jacobs@arkansasag.gov
*Counsel for Petitioner*
*State of Arkansas*

**BRENNA BIRD**
Iowa Attorney General

Eric H. Wessan, IA #AT0014313
  Solicitor General
Iowa Attorney General's Office
1305 E. Walnut Street
Des Moines, IA 50319
Phone: (515) 823-9117
eric.wessan@ag.iowa.gov

*Counsel for Petitioner*
*State of Iowa*

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

        */s/ Jeff P. Johnson*
        Jeff P. Johnson

## CERTIFICATE OF COMPLIANCE

I hereby certify that this response complies with the typeface and formatting requirements of Fed. R. App. P. 27 and 32, and that it contains 1,562 words as determined by the word-count feature of Microsoft Word.

        /s/ *Jeff P. Johnson*